Bret Martin (SBN 304658)
    E-Mail: bmartin@fisherphillips.com
Madeleine M. Nadeau (SBN 334366)
    E-Mail: mnadeau@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile:  (858) 597-9601

Attorneys for Defendant
Extra Space Management, Inc.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN BURKHARDT, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EXTRA SPACE MANAGEMENT, INC., a Utah Corporation, and DOES 1 to 50, inclusive,<br><br>Defendants. | Case No.: 2:25-CV-00547-DJC-CKD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EXTRA SPACE MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**<br><br>Date: April 3, 2025<br>Time: 1:30 p.m.<br>Courtroom: 10<br>Judge: Hon. Daniel J. Calabretta<br><br>Complaint Filed:   January 15, 2025<br>Removed: February 18, 2025<br>Trial Date: Not Set |

I.  **INTRODUCTION**

For nearly a century, the Federal Arbitration Act ("FAA") has formed a cornerstone of our judicial system by announcing a clear and "liberal federal policy favoring arbitration." *AT&T Tech., Inc. v. Communication Workers of Am.,* 475 U.S. 643, 650 (1986). In doing so, "Congress…withdrew the power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). California echoes the sentiments of her federal counterpart by affirming a strong public policy in favor of private resolution, with "[d]oubts as to whether the arbitration clause applies to a particular dispute to be resolved in favor of sending the parties to arbitration." *United Transp. v. Southern Cal. Rapid Transit Dist.*, 7 Cal.App.4th 804, 808 (1992).

The immediate case exemplifies these policies by presenting to this Court, and requesting the appropriate enforcement of, a private arbitration agreement (the "Arbitration Agreement" or "Agreement") between Plaintiff Jordan Burkhardt ("Plaintiff") and his former employer, Extra Space Management, Inc. ("Extra Space" or "Defendant").

Here, the Arbitration Agreement encompasses all claims arising out of the employment relationship between Plaintiff and Defendant. Plaintiff's Complaint alleges seven causes of action against Extra Space solely related to Plaintiff's employment with Extra Space: (1) Disability Discrimination in Violation of Cal. Gov't Code § 12940(a); (2) Failure to Engage in the Interactive Process in Violation of Cal. Gov't Code § 12940(n); (3) Failure to Provide Reasonable Accommodation in Violation of Cal. Gov't Code § 12940(m); (4) Failure to Take All Reasonable Steps to Prevent Discrimination in Violation of Cal. Gov't Code § 12940(k); (5) Retaliation in Violation of FEHA (Cal. Gov't Code § 12940(h)); (6) Retaliation in Violation of CFRA (Cal. Gov't Code § 12945.2, et seq.); and (7) Wrongful Termination in Violation of Public Policy. *See* Request for Judicial Notice ("RJN"), Ex. 1 (Complaint). As such, there is no doubt that Plaintiff's alleged claims arise out of alleged "conduct within the scope" of his employment with Extra Space and are encompassed by the Arbitration Agreement.

Because the Arbitration Agreement complies with all appropriate legal requirements, and for all reasons set forth below, Defendant Extra Space respectfully requests that this Court issue an order compelling Plaintiff's claims to arbitration and staying the proceedings pending the resolution thereof pursuant to the FAA, 9 U.S.C. section 3.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint against Extra Space in the Superior Court of the State of California, for the County of Sacramento on January 15, 2025. *See* RJN at Ex. 1 (Complaint). On February 18, 2025, the matter was timely removed to this Court on the basis of diversity jurisdiction under 28 U.S.C. section 1331. *See* Docket ("Dkt."), #1. Extra Space filed an Answer in the State Court action prior to removal and alleged as its first affirmative defense that Plaintiff's claims are subject to the Arbitration Agreement and specifically alleged that "Defendant will seek to compel individual arbitration of Plaintiff's claims." *See* RJN, Ex. 2 (Answer), ¶¶ 1-2.

## III. FACTUAL BACKGROUND

### A. The Parties

Extra Space is a nationwide company offering self-storage facilities. Yoachum Decl. at ¶ 11. Extra Space maintains over 1800 self-storage facilities across the United States. *Id*. Plaintiff began his employment with Extra Space on August 10, 2021 as a Store/Property Manager. *Id.* at ¶ 8. As a Store/Property Manager, Plaintiff was responsible for maintaining Extra Space's daily operations, including renting units to customers, corresponding with customers via phone, email, and in-person, implementing marketing strategies, and transacting credit card payments that cross state lines. *Id.* Throughout his employment, Plaintiff worked at various Extra Space locations throughout California. *Id.* The last Extra Space location that Plaintiff worked at was the 7873 Citrus Heights site located at 6230 Auburn Boulevard, Citrus Heights, CA 95621. *Id.* During Plaintiff's employment at Extra Space's Citrus Heights location, he routinely rented out storage space units to customers residing in states outside of

California, such as such as Florida, Washington, Arkansas, New Jersey, Oregon, Idaho, Texas, Nevada, New Mexico, Tennessee, Missouri, Virginia and Minnesota. *Id*. at ¶ 11.

### B. Plaintiff Entered Into A Legally Binding Arbitration Agreement With Extra Space

#### 1. Extra Space's Human Resources Management Platform

Prior to and during the period in which Plaintiff was an employee of Extra Space, Extra Space utilized a human resources management platform called Workday for a variety of employee management tasks, including for the rollout of new policies and agreements. Yoachum Decl. at ¶ 4. Upon hire, all Extra Space employees are required to create a Workday account using their unique employee ID. *Id.*

Once an employee sets up their Workday account, the employee is required to set their own, unique Workday password. *Id.* at ¶ 5. Only the employee has access to his or her unique Workday password and, without the employee's unique username and password, the employee cannot login to his or her Workday account. *Id.* While Extra Space's IT department can reset or remind an employee of their password, they do not have access to employees' Workday accounts. *Id.* Similarly, the Human Resources department can only view an employee's Workday account and activity but cannot access the account directly. *Id.* In addition, Extra Space's managers do not have access to employees' Workday accounts or Workday passwords. *Id.* Plaintiff created an account in Workday when he began his employment with Extra Space. *Id*. at ¶ 9.

#### 2. Plaintiff Executed the Arbitration Agreement on October 26, 2023

In or around 2023, Extra Space began rolling out a new Arbitration Agreement for its employees via Workday. *Id*. at ¶ 6. Plaintiff was employed during the rollout and, as such, was provided the 2023 Arbitration Agreement via Workday for his review and execution. *Id*. at ¶ 9. Plaintiff digitally signed the Arbitration Agreement on October 26, 2023 at 3:05 p.m. PST, while logged into Workday. *Id*. at ¶ 9, Ex. A. The printed date underneath the signature block "Oct 26, 2023" indicates the date the electronic signature was made by Plaintiff. *Id.* Given the unique login and password process for signing

documents in Workday, the electronic signature was made by Plaintiff on October 26, 2023. *Id.* Moreover, Workday's security protocols discussed herein ensure that only the identified user can review and digitally sign documents on the user's behalf, which leaves no doubt that Plaintiff executed the Arbitration Agreement on October 26, 2023 via electronic signature. *Id.*

     3. *Applicability of the Arbitration Agreement Plaintiff Executed*

The Arbitration Agreement enumerates the specific claims covered by the Agreement as follows:

> The claims covered by this Agreement, and subject to arbitration, include but are not limited to all past, present, future disputes and claims related to or arising out of or in connection with your employment with, application for employment with, or termination of employment from the Company . . . This Agreement covers disputes and claims including, but not limited to, **wrongful termination**; **discrimination**; . . . **retaliation**; breach of contract/covenant; trade secrets; emotional distress; fraud; misrepresentation; defamation; tort claims; minimum wage; off the clock work; overtime; bonuses; meal/rest periods; wage statements; reimbursement; penalties; benefits; [and] violation of any . . . **state or other government constitution, statute, ordinance or regulation**.

Yoachum Decl. at Ex. A, ¶ 3.

Here, Plaintiff's Complaint alleges the following seven causes of action related to his employment with Defendant: (1) Disability Discrimination in Violation of Cal. Gov't Code § 12940(a); (2) Failure to Engage in the Interactive Process in Violation of Cal. Gov't Code § 12940(n); (3) Failure to Provide Reasonable Accommodation in Violation of Cal. Gov't Code § 12940(m); (4) Failure to Take All Reasonable Steps to Prevent Discrimination in Violation of Cal. Gov't Code § 12940(k); (5) Retaliation in Violation of FEHA (Cal. Gov't Code § 12940(h)); (6) Retaliation in Violation of CFRA (Cal. Gov't Code § 12945.2, et seq.); and (7) Wrongful Termination in Violation of Public Policy. *See* RJN at Ex. 1 (Complaint).

Plaintiff also alleges that he "was employed by [Extra Space] . . . from August 6, 2021, until his **illegal termination** on May 6, 2024" *Id.* at ¶ 2. As such, there is no doubt

/ / /

that Plaintiff's alleged claims arise out of and relate to his employment with Extra Space and are encompassed by the Arbitration Agreement.

### 4. Plaintiff Did Not Opt-Out

The Arbitration Agreement also includes an "opt out" provision, which allowed Plaintiff to opt out of the Arbitration Agreement within thirty days after receiving the Agreement. Yoachum Decl. at Ex. A, ¶ 10. The opt out provision specifically provides "If you opt out, *the decision to do so will not adversely affect your employment in any way*." *Id.* Plaintiff signed the Agreement on October 26, 2023, and he did not exercise his right to opt out. Yoachum Decl. at ¶¶ 9-10. Accordingly, the Court must order Plaintiff to arbitrate his claims.

### C. Plaintiff Refused to Stipulate to Arbitration

On January 31, 2025, Extra Space's counsel contacted Plaintiff's counsel and requested that Plaintiff stipulate to submit his claims to arbitration pursuant to the Arbitration Agreement. Declaration of Madeleine Nadeau at ¶ 2, Ex. 1. Plaintiff's counsel responded on February 6, 2025, indicating that Plaintiff would "oppose any attempt to compel . . . his claims into arbitration" thereby necessitating the instant Motion. *Id.* at ¶ 3, Ex. 2.

## IV. THE FEDERAL ARBITRATION ACT GOVERNS THE OPERATIVE ARBITRATION AGREEMENT AND REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS

### A. The Federal Arbitration Act Governs the Arbitration Agreement

The Federal Arbitration Act ("FAA") governs an arbitration agreement when the agreement "evidence[s] a transaction involving commerce." 9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-119 (2001). Because the phrase "involving commerce" is interpreted broadly, any arbitration agreement affecting commerce is governed by the FAA. *See Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 273-74 ("After examining the statute's language, background, and structure, we conclude that the word 'involving' is broad and is indeed the functional equivalent of

1  'affecting.'"). Indeed, the FAA's reach is expansive, and coincides "with that of the
2  Commerce Clause." *Id.* at 274. As a result, the Supreme Court and multiple California
3  courts have found that as long as a company purchases out of state materials, operates
4  in multiple states and/or engages in any interstate commerce, the FAA preempts state
5  law. *See, e.g., Allied-Bruce Terminix Cos.,* 513 U.S. at 282; *see also Basura v. U.S.*
6  *Home Corp*. (2002) 98 Cal.App.4th 1205, 1214; *Hedges v. Carrigan*, 117 Cal.App.4th
7  578, 586 (2004).

8      In this case, the FAA governs the Arbitration Agreement because Extra Space
9  sufficiently engages in interstate commerce. Extra Space is a nationwide company
10 offering self-storage facilities. Extra Space maintains over 1800 self-storage facilities
11 across the United States. Yoachum Decl. at ¶ 11. Extra Space also uses interstate
12 communication networks as its employees must conduct telephone calls, send mail and
13 documents across state lines using interstate communication networks including the
14 internet, U.S. Postal System, and United Parcel Service. *Id*. Moreover, Extra Space's
15 advertising and marketing efforts are nationwide and not directed only to residents living
16 in a particular state. *Id.* Finally, Extra Space maintains vendors and purchases goods
17 and supplies that are manufactured outside of California. *Id*. Purchasing goods from out
18 of state has consistently been held sufficient to meet the "interstate commerce"
19 requirement of the FAA. *See Allied-Bruce Terminix Cos*., 513 U.S. at 282.

20     Not only does the FAA apply generally to "all employment contracts" except those
21 in the transportation industries (*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-
22 119 (2001)), it applies to the Arbitration Agreement here as it explicitly incorporates the
23 FAA. Yoachum Decl. at Ex. A, ¶ 13. Specifically, the Agreement states that "[t]he Parties
24 agree that the Company is engaged in transactions involving interstate commerce, and
25 this Agreement shall be enforceable under the substantive and procedural provisions of
26 the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.." *Id*. Accordingly, the FAA governs
27 Plaintiff's Arbitration Agreement.
28 / / /

### B. The Federal Arbitration Act Requires Arbitration of Plaintiff's Claims

In the FAA, 9 U.S.C. section 1, *et seq.*, "Congress declared a national policy favoring arbitration and withdrew the power of the States to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp.,* 465 U.S. at 10. The FAA creates a presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate. 9 U.S.C. §2; *see also AT&T Mobility LLC v. Concepcion* 563 U.S. 333, 344 (2011) ("The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.") Indeed, as the Supreme Court noted in *AT&T Mobility*, it is "beyond dispute that the FAA was designed to promote arbitration." *Id.* at 345.

Courts have consistently found that an agreement between an employer and employee to arbitrate employment-related disputes is valid and enforceable under the FAA. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. at 105; *see also EEOC v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742 (9th Cir. 2003) (agreement for arbitration of employment claims are valid and enforceable). Notably, the burden is on the party opposing arbitration to proffer evidence demonstrating that such an agreement is invalid. *See Green Tree Fin. Corp. v. Randolph* 531 U.S. 79, 91-92 (2000).

Here, Plaintiff's alleged claims fall directly within the scope of the Arbitration Agreement since each of Plaintiff's seven alleged causes of action 'arises out of or relates to' his employment with Extra Space. *See* RJN at Ex. 1 (Complaint). Accordingly, the Court must enforce the Arbitration Agreement according to its terms and compel Plaintiff's claims to arbitration.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V. CALIFORNIA LAW ALSO REQUIRES ARBITRATION OF PLAINTIFF'S CLAIMS

### A. California Statutory Law Provides for the Enforcement of Arbitration Agreements

Mirroring the FAA, California's Arbitration Act requires courts to compel arbitration of any controversy covered by the terms of a written agreement to arbitrate. Specifically, California Code of Civil Procedure Section 1281.2 provides:

> On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists ...

California courts have consistently recognized this state's strong public policy in favor of enforcing arbitration agreements. *Armendariz v. Foundation Health Psychcare Services*, 24 Cal.4th 83, 917 (2000) ("California law … favors enforcement of valid arbitration agreements); *Moncharsh v. Heily & Blasé*, 3 Cal.4th 1, 9 (1992) (California has a "strong public policy in favor of arbitration"); *McManus v. CIBC World Markets Corp.*, 109 Cal.App.4th 76, 85 (2003) ("There is a public policy in favor of arbitration under . . . state law"). Accordingly, this Court must review the Arbitration Agreement in the context of California's strong presumption of enforceability and as such must decide any close questions of law or fact in favor of the enforcement of that agreement.

### B. The Arbitration Agreement Satisfies the *Armendariz* Requirements

In *Armendariz,* the California Supreme Court held that, to be enforceable in the employment context, an arbitration agreement must: (1) provide for a neutral arbitrator; (2) provide for adequate discovery; (3) require the arbitrator to issue a written decision; (4) provide for the same remedies that would otherwise be available to the employee in court; and (5) not require the employee to bear costs unique to arbitration. *Armendariz*, 24 Cal.4th at 102–13. Here, the Arbitration Agreement exceeds these requirements.

/ / /

/ / /

### 1. The Arbitration Agreement Provides for a Neutral Arbitrator

The *Armendariz* court reiterated that a neutral arbitrator "is essential to ensuring the integrity of the arbitration process." *Armendariz*, 24 Cal.4th at 103. Here, the Arbitration Agreement provides for a neutral arbitrator. It states that "[t]he Parties agree any arbitration shall be conducted before one neutral arbitrator selected by the Parties under the JAMS Employment Arbitration Rules . . . ." Yoachum Decl. at Ex. A, ¶ 2. The Arbitration Agreement thus provides for a neutral arbitrator.[1]

### 2. The Arbitration Agreement Provides for More Than Minimal Discovery

An arbitration proceeding must provide "for more than a minimal amount of discovery." *Armendariz*, 24 Cal.4th at 103-05. Here, the Arbitration Agreement provides that the JAMS "Employment Arbitration Rules & Procedures" shall apply, and those rules provide for discovery. *See* RJN at Ex. 3 (JAMS Employment Rules), Rule 17(a)-(e) (providing for initial disclosures, depositions, production of documents and information, informal discovery conferences with the arbitrator, and third-party discovery). The Arbitration Agreement meets the discovery requirement as set forth in *Armendariz*.[2]

### 3. The Arbitration Agreement Requires the Arbitrator to Issue a Written Opinion

An arbitrator "must issue a written arbitration decision that will reveal … the essential findings and conclusions on which the award is based" so that the arbitrator is not "essentially free to disregard the law." *Armendariz*, 24 Cal.4th at 107. The Arbitration Agreement explicitly states that "[t]he decision of the arbitrator shall be in writing and

---

[1] *See, e.g.*, *Erives v. Regenesis Biomedical, Inc.*, 2023 WL 5444263, at *5 (C.D. Cal. 2023) ("The Court's own review of the JAMS Rules indicates that they meet the five factors listed above: they provide for a neutral arbitrator (JAMS Rule 7)…."); *Peoples v. Children's Hospital of Central California*, 2020 WL 469338, at *3 (E.D. Cal. 2020) ("The JAMS Rules require that a neutral arbitrator conducts the arbitration. *See* JAMS Rule 7. Thus, the first *Armendariz* requirement is met.").

[2] *See, e.g.*, *Erives*, 2023 WL 5444263, at *5 (JAMS Rule 17 satisfies discovery requirements of *Armendariz*); *Children's Hospital*, 2020 WL 469338, at *3 (same); *see generally Dotson v. Amgen, Inc.*, 181 Cal.App.4th 975, 984 (2010) (even an arbitration agreement that limited depositions to "to one deposition of a natural person" barring an arbitrator approving more was not unconscionable under *Armendariz*).

shall provide the reasons for the arbitrator's award unless the Parties otherwise agree in writing." Yoachum Decl. at Ex. A, ¶ 5. Moreover, the JAMS Employment Arbitration Rules & Procedures requires the arbitrator issue a written decision.[3] Thus, the Agreement meets this *Armendariz* requirement.

       *4.*  *The Arbitration Agreement Does Not Limit Plaintiff's Available Remedies*

   The *Armendariz* court also recognized "the principle that an arbitration agreement may not limit statutorily imposed remedies." *Armendariz*, 24 Cal.4th at 103. Indeed, one of the key reasons the *Armendariz* court found the arbitration provision it examined unenforceable was because of the agreement's limitation on the plaintiff's remedies. *Id*. Specifically, the arbitration provision in *Armendariz* limited the plaintiff's damages to lost wages. *Id*. at 103–04. Here, the Arbitration Agreement places no limitation on available remedies and specifically states that "[t]he arbitrator is authorized to award any remedy or relief that would have been available to the Parties had the matter been heard in court." Yoachum Decl. at Ex. A, ¶ 5. Thus, the Arbitration Agreement does not violate *Armendariz*'s prohibition against limiting remedies.

       *5.*  *Plaintiff Will Not Incur Any Costs Unique to Arbitration*

   Finally, the *Armendariz* court maintained that the employer should bear the costs unique to arbitration in order to "ensure that employees bringing . . . claims will not be deterred by costs greater than the usual costs incurred during litigation." *Armendariz*, 24 Cal.4th at 111–12. To that end, the Arbitration Agreement provides that Extra Space "will pay the arbitrator's fees and any additional administrative fees unique to arbitration . . . ." Yoachum Decl. at Ex. A, ¶ 4. As such, Plaintiff will not incur any additional expenses as a condition of access to the arbitration forum.

---

[3] *See* RJN at Ex. 3 (JAMS Employment Rules), Rule 24(h) ("The [Arbitration] Award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. The Award shall also contain a concise written statement of the reasons for the Award, stating the essential findings and conclusions on which the Award is based. The Parties may agree to any other form of Award, unless the Arbitration is based on an Arbitration Agreement that is required as a condition of employment.").

In sum, the Arbitration Agreement exceeds the requirements of *Armendariz*. Given these thoughtful terms, there are no grounds not to enforce the Arbitration Agreement.

## VI.    THE ARBITRATION AGREEMENT IS MUTUAL

Based on the Parties' meet and confer efforts, Extra Space anticipates that Plaintiff will attempt to rely on *Cook v. University of Southern California*, 102 Cal.App.5th 312 (2024) to argue that the Agreement "lacks mutuality" because it purportedly does not require Extra Space's non-signatory beneficiaries (identified as the "Company Group" in the Agreement) to arbitrate their claims against Plaintiff. Plaintiff's reading of *Cook* misconstrues the Court's decision and ignores critical distinctions between the agreement in that case and the Agreement.

In *Cook*, the Court found the at-issue arbitration agreement unconscionable in that it required the plaintiff employee to arbitrate all claims she may have against both USC (her employer) or "any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in the capacity as such or otherwise." However, the agreement had no parallel obligation that the "related entities" arbitrate claims against the employee, and in fact the agreement expressly required <u>only USC</u> to arbitrate its claims against the employee. *Cook, supra,* 102 Cal.App.5th at 326-327.

By contrast, the Agreement Plaintiff signed with Extra Space has no such defect. Rather, the Agreement explicitly requires the "Parties" (defined by the Agreement to include Plaintiff, Extra Space, and certain specified entities and individuals (such as Extra Space's parent/ subsidiary entities and current/former employees) "to <u>mutually arbitrate</u> all Claims, as defined in Section 3 below, <u>the Parties may have against each other</u>." Yoachum Decl. at Ex. A, ¶ 3 (underlining added). Thus, the lack of mutuality in *Cook* is simply not present in the Agreement.

Plaintiff's reliance on *Cook* is misguided and does not bar enforcement of the Agreement.

## VII. ANY PROVISION DEEMED UNCONSCIONABLE SHOULD BE SEVERED AND THE REMAINDER BE ENFORCED

Considering the strong public policy favoring arbitration under both the FAA and the CAA, if the Court finds any of the Agreement's terms are unconscionable, those terms can and should be severed, particularly pursuant to the severability provision in the Agreement and in light of the recent California Supreme Court decision, *Ramirez v. Charter Communication, Inc.*, 16 Cal.5th 478 (2024). *See* Cal. Civ. Code § 1670.5(a); *see also* Yoachum Decl. at Ex. A, ¶ 12. Indeed, the California Supreme Court recently confirmed in *Ramirez* that "courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; and enforcing the balance of the contract would be in the interests of justice." 16 Cal.5th at 517. Importantly, "[t]he court cannot refuse to enforce an agreement simply by finding that two or more collateral provisions are unconscionable as written and eschewing any further inquiry." *Id*. at 518. Moreover, where there is a severance clause, like here, "the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced." *Id*. at 517; *see also*, *SI V, LLC v. FMC Corp.*, 223 F. Supp. 2d 1059, 1063 (N.D. Cal. 2002) (where parties to an agreement have included a severance clause, an unenforceable contractual provision may be severed while enforcing the remaining provisions).

Here, the Arbitration Agreement specifically provides that "[i]f any provision of this Agreement is determined to be illegal or unenforceable, such determination shall not affect the balance of this Agreement, which shall remain in full force and effect, and such invalid provision shall be deemed severable . . . ." Yoachum Decl. at Ex. A, ¶ 12. Moreover, the Agreement contains a "Protections" provision stating, "If a court determines that this Agreement is lacking any employee protections required by law, the Company may offer the employee protections the court and/or law deems necessary to preserve the enforceability of this Agreement." *Id.* at ¶ 11.

The purpose of the Agreement is clear – to require <u>mutual</u> arbitration of <u>employment related disputes</u> and to provide employees subject to the Agreement all legally required protections to ensure its enforceability. To the extent this Court finds any provisions of the Agreement to be unconscionable or unenforceable (which it should not), such provisions should be severed with the remainder of the Agreement being upheld and enforced.

## VIII.  PLAINTIFF'S CLAIMS SHOULD BE STAYED PENDING ARBITRATION

Where a dispute is subject to arbitration under the terms of a written agreement, the district court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Indeed, "when a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizziri*, 601 U.S. 472, 478-79 (2024) (holding that a stay is required when requested under 9 U.S.C. Section 3).

Here, a continuation of any proceedings in this Court would be disruptive to the arbitration of Plaintiff's claims and would require Extra Space to risk waiving its right to arbitration. In addition, allowing any proceeding to continue in Court during the arbitration would waste both the Court's and the Parties' resources and diminish the effectiveness and efficiency that arbitration was intended to achieve. Therefore, once the Court finds Plaintiff's Arbitration Agreement to be enforceable, the Court should stay all further proceedings pending completion of the binding arbitration.

## IX.  REQUESTED RELIEF

Plaintiff cannot overcome the inherent presumption of arbitration by marshalling evidence to demonstrate that the Arbitration Agreement is somehow invalid or otherwise inapplicable to the causes of action in this matter. Accordingly, Defendant Extra Space respectfully requests the Court grant its motion to compel arbitration and order Plaintiff

///

///

1  to submit his claims to arbitration, and to stay this matter pending the outcome of the
2  arbitration proceedings.

3  DATE: February 25, 2025                    **FISHER & PHILLIPS LLP**

                                              By: /s/ *Madeleine M. Nadeau*
                                              Bret Martin
                                              Madeleine M. Nadeau
                                              Attorneys for Defendant
                                              Extra Space Management, Inc.

# CERTIFICATE OF SERVICE

I, the undersigned, am at least 18 years old and not a party to this action. I am employed in the County of San Diego with the law offices of Fisher & Phillips LLP and its business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On February 25, 2025, I served the following document(s) **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EXTRA SPACE MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION** on the person(s) listed below by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Timothy B. Del Castillo (SBN: 277296)<br>Lisa L. Bradner (SBN: 197952)<br>Kent L. Bradbury (SBN: 279402)<br>Bryce Q. Fick (SBN 322951)<br>**CASTLE LAW: CALIFORNIA EMPLOYMENT COUNSEL, PC**<br>2999 Douglas Blvd., Suite 180<br>Roseville, California 95661 | Telephone: (916) 245-0122<br>E-Mail: tdc@castleemploymentlaw.com<br>lb@castleemploymentlaw.com<br>kb@castleemploymentlaw.com<br>bf@castleemploymentlaw.com<br><br>*Attorneys for Plaintiff, Jordan Burkhardt* |

☐ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed February 25, 2025, at San Diego, California.

Angelica Green-Rosas
Print Name

By: *Angelica Green-Rosas*
Signature