Bret Martin (SBN 304658)
  E-Mail: bmartin@fisherphillips.com
Madeleine M. Nadeau (SBN 334366)
  E-Mail: mnadeau@fisherphillips.com
**FISHER & PHILLIPS LLP**
4747 Executive Drive, Suite 1000
San Diego, California 92121
Telephone: (858) 597-9600
Facsimile: (858) 597-9601

Attorneys for Defendant
Extra Space Management, Inc.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORDAN BURKHARDT, an individual,<br><br>                  Plaintiff,<br><br>        v.<br><br>EXTRA SPACE MANAGEMENT, INC., a Utah Corporation, and DOES 1 to 50, inclusive,<br><br>                  Defendants. | Case No.: 2:25-CV-00547-DJC-CKD<br><br>**DECLARATION OF ROBBIE YOACHUM, SR. IN SUPPORT OF DEFENDANT EXTRA SPACE MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION**<br><br>Date: April 3, 2025<br>Time: 1:30 p.m.<br>Courtroom: 10<br>Judge: Hon. Daniel J. Calabretta<br><br>Complaint Filed: January 15, 2025<br>Removed:         February 18, 2025<br>Trial Date:       Not Set |

**DECLARATION OF ROBBIE YOACHUM, SR.**

I, Robbie Yoachum, Sr., declare and state under penalty of perjury as follows:

1. I am Robbie Yoachum, Sr., the Senior Director of Human Resources at Extra Space Management, Inc. ("Extra Space"). I make this declaration in support of Extra Space's Motion to Compel Arbitration and Stay the Action. I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

2. I began working for Extra Space on May 13, 2019 as a Director of Human Resources. On February 1, 2021, I was promoted to Senior Director of Human Resources. My duties and responsibilities include the overall administration, coordination, and evaluation of all human resources functions throughout the country, including the State of California, including recruitment, onboarding, workers compensation, benefits, employee relations, and training and development. In my position, I have access to business records and personnel records of current and former employees of Extra Space. In the ordinary course of business, Extra Space maintains copies of employees' personnel records, including agreements that have been signed as part of their employment. I have reviewed the business and personnel records pertaining to Plaintiff Jordan Burkhardt ("Plaintiff"), who is a former employee of Extra Space, and, based thereon, have knowledge of his employment with Extra Space.

3. In my position, I am familiar with Extra Space's policies and practices regarding arbitration and Extra Space's "Mutual Arbitration Agreement" (the "Agreement"). In or around 2023, Extra Space began rolling out the new Agreement at Extra Space's locations.

4. Prior to and during the period in which Plaintiff was an employee of Extra Space, Extra Space utilized a human resources management platform called Workday for a variety of employee management tasks, including for the rollout of new agreements. To access Workday, upon hiring by Extra Space, all employees were

required to create a Workday account using their unique employee ID.

5.     Once the employee set up their Workday account, the employee is required to set their own, unique Workday password. Only the employee had access to his or her unique Workday password and without the employee's unique username and password, the employee could not login to his or her Workday account. While the IT department can reset or remind an employee of their password, they do not have access to employees' Workday accounts. Similarly, the Human Resources department can only view an employee's Workday account and activity, but cannot access the account directly. In addition, managers do not have access to employees' Workday accounts or Workday passwords.

6.     Prior to and during the period in which Plaintiff was an employee of Extra Space, employees were asked to review and sign the Agreement. To access and sign the Agreement, employees were required to sign into Workday using their unique username and password. In Workday, once the task for the Agreement was initiated, employees were then asked to review the Agreement and click "sign here" on the document. This places the employee's electronic signature on the Agreement. This also places the employee's name and the date of execution underneath the signature block. Once the employee clicks the "sign here" button and the electronic signature is placed, the task is marked as complete.

7.     Once an employee signs into Workday using his or her unique username and password and electronically signs the Agreement as described above, Extra Space's records reflect the date the employee executed the Agreement. If the employee does not sign into Workday using his or her unique password, Extra Space's records will not indicate that the Agreement was digitally executed. Further, if the employee signs into Workday using his or her unique username and password but fails to electronically execute the Agreement as set forth above, Extra Space's records will not indicate that the Agreement was digitally executed. As a result, if Extra Space's records reflect that the employee electronically executed the Agreement, then it indicates that

1  the employee signed into Workday using his or her unique password and clicked "sign
2  here" placing his or her electronic signature on the Agreement.  Once signed and
3  completed, a copy of the signed Agreement is uploaded to the employee's digital
4  personnel file maintained by Extra Space's Human Resources on Workday.  This digital
5  personnel file tracks what documents have been signed by each employee.

6        8.    I am in possession of and have reviewed the documents related to
7  Plaintiff's employment, including the Agreement signed by Plaintiff.  According to
8  applicable business records, Plaintiff began his employment with Extra Space on August
9  10, 2021.  Plaintiff's last position held with Extra Space was store/property manager.  As
10 a store/property manager, Plaintiff was responsible for maintaining the daily operations
11 of the location, including renting units to customers (both in-state and out-of-state
12 customers), corresponding with customers via phone, email, and in-person,
13 implementing marketing strategies, and transacting credit card payments that cross
14 state lines.  Throughout his employment, Plaintiff worked at various Extra Space
15 locations throughout California.  For example, the last Extra Space location that Plaintiff
16 worked at was the 7873 Citrus Heights site located at 6230 Auburn Boulevard, Citrus
17 Heights, California, 95621.

18       9.    Plaintiff created an account in Workday when he began his employment
19 with Extra Space. Moreover, Plaintiff was subject to the rollout process described above
20 and was asked to assent to the terms of the Agreement via Workday.  On October 26,
21 2023, at 3:05 p.m. PST, while logged into Workday, Plaintiff executed the Agreement.
22 The printed date underneath the signature block "Oct 26, 2023" indicates the date the
23 electronic signature was made by Plaintiff.  Given the unique login and password
24 process for signing documents in Workday, the electronic signature was made by
25 Plaintiff on October 26, 2023.  Workday's security protocols discussed herein ensure
26 that only the identified user can review and digitally sign documents on the user's behalf,
27 which leaves no doubt that Plaintiff executed the Arbitration Agreement on October 26,
28 2023, via electronic signature. A true and correct copy of the Agreement, signed

electronically by Plaintiff is attached as **Exhibit A**. The Agreement is a document Extra Space has maintained in the ordinary course of business and to which I have access in my position at Extra Space.

10. The Agreement includes an "opt out" provision, which allowed Plaintiff to opt out of the Arbitration Agreement within thirty days after receiving the Agreement. Plaintiff did not exercise his right to opt out.

11. In my role as Senior Director of Human Resources, I am familiar with Extra Space's business. Extra Space is a nationwide company offering self-storage facilities. Extra Space maintains over 1800 self-storage facilities across the United States. Extra Space also uses interstate communication networks as its employees must conduct telephone calls, send mail and documents across state lines using interstate communication networks including the internet, U.S. Postal System, and United Parcel Service. Additionally, Extra Space maintains vendors and purchases goods and supplies that are manufactured outside of California. During Plaintiff's employment at Extra Space's storage location in Citrus Heights, California, the Citrus Heights location routinely rented out storage space units to customers residing in states outside of California, such as such as Florida, Washington, Arkansas, New Jersey, Oregon, Idaho, Texas, Nevada, New Mexico, Tennessee, Missouri, Virginia and Minnesota. Extra Space was engaged in such transactions during the entirety of Plaintiff's employment. Additionally, Extra Space's advertising and marketing efforts are nationwide and not directed only to residents living in a particular State.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and executed this 25 day of February 25, 2025, in Salt Lake City, UT.

*Robbie Yoachum*
ROBBIE YOACHUM, SR.

DECLARATION OF ROBBIE YOACHUM, SR. IN SUPPORT OF DEFENDANT EXTRA SPACE MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION
FP 53948492.1

# EXHIBIT A

## **MUTUAL ARBITRATION AGREEMENT**

In consideration of the at-will employment relationship between you and Extra Space Management, Inc. (the "Company"), and the mutual desire to enter into this Agreement, you and the Company hereby agree that, except as otherwise provided in or by this Agreement, any and all disputes, claims or controversies between you and the Company (and/or any of the Company's parents, subsidiaries, affiliates, as well as any of their respective officers, directors, current/former employees, agents, contractors, representatives, employee benefit plans and parties associated therewith, associates, owners, shareholders, successors, or assigns (collectively, the "Company Group")), including but not limited to any dispute arising out of or relating to this Agreement, the employment relationship between you and the Company, any alleged employment relationship with the Company Group, or the formation or termination of any employment relationship or alleged employment relationship with the Company or Company Group, that are not resolved by their mutual agreement shall be resolved by final and binding arbitration by a neutral arbitrator. The Company, Company Group, and you together shall be referenced herein as the "Parties." This Agreement includes Claims (defined in Section 3, below) that the Company or Company Group may have against you, or that you may have against the Company or Company Group. This Agreement affects your rights to a trial by a jury. You may wish to seek legal advice before signing this Agreement.

     1.     **Arbitration**. This Agreement requires the Parties to mutually arbitrate all Claims, as defined in Section 3 below, the Parties may have against each other. In arbitration, each side in the dispute presents its case to a neutral third party called an arbitrator, rather than to a judge or jury. You and the Company and/or Company Group are entitled to be represented by your own legal counsel in the arbitration. After reviewing the evidence and considering the arguments of the Parties, the arbitrator will issue a written decision. There will be no trial by a judge or jury, and no appeal of the arbitrator's decision, except as provided by law.

     2.     **Arbitrator**. The Parties agree any arbitration shall be conducted before one neutral arbitrator selected by the Parties under the JAMS Employment Arbitration Rules & Procedures (the "JAMS Rules") then in effect. You may obtain a copy of the JAMS Rules by accessing the JAMS website at https://www.jamsadr.com and/or by requesting a copy of the JAMS Rules from Human Resources. The arbitrator's decision shall be final and binding.

     3.     **Claims**. The claims covered by this Agreement, and subject to arbitration, include but are not limited to all past, present, future disputes and claims related to or arising out of or in connection with your employment with, application for employment with, or termination of employment from the Company (and, if applicable or alleged, any Company Group person or entity), but excludes any currently pending litigation and/or currently pending class / collective / representative actions against the Company. This Agreement covers disputes and claims including, but not limited to, wrongful termination; discrimination; harassment; retaliation; breach of contract/covenant; trade secrets; emotional distress; fraud; misrepresentation; defamation; tort claims; minimum wage; off the clock work; overtime; bonuses; meal/rest periods; wage statements; reimbursement; penalties; benefits; violation of any federal, state or other government constitution, statute, ordinance or regulation, including but not limited to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Older Worker Benefit Protection Act, the Americans With Disabilities Act, the Rehabilitation Act, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act, and any state, local or municipal whistleblower, human rights, labor and wage and hour laws, to the extent permitted by the applicable laws (collectively the "Claims"); however, the term "Claims" does not include any claim or claims that cannot be arbitrated under the applicable law, such as workers compensation and unemployment compensation claims, claims under the Sarbanes-Oxley Act (to the extent applicable), claims for benefits under the Employment Retirement Income Security Act (which must be

resolved in accordance with the terms and procedures set forth in the applicable plan documents), and claims under the National Labor Relations Act, and except where the law allows, sexual harassment claims and retaliation claims for reporting or asserting a right or remedy based on sexual harassment. The term "Claims" also expressly excludes claims for temporary or emergency injunctive relief to preserve the status quo prior to and/or in aid of arbitration. This Agreement is not intended to prevent you from filing complaints and/or claims with government agencies, commissions, board and/or other bodies of government. However, this Agreement is intended to cover such complaints and claims to the extent such coverage is permitted by law. Employees may learn more about their legal rights by visiting websites hosted by federal and state governmental agencies. Current links to some of these federal websites are listed below, although they are subject to change by the hosting agencies: www.dol.gov;www.dol.gov/compliance/laws/comp-flsa.htm; www.dol.gov/dol/topic/wages/index.htm; and www.eeoc.gov/.

4. **Initiating Arbitration**. Either Party may initiate arbitration by making a written request to arbitrate to the other Party, listing the Claim(s) to be arbitrated, and by submitting a Demand for Arbitration directly with JAMS per instructions on JAMS' website. The Demand for Arbitration must be submitted *to JAMS* within the statute of limitations under applicable state and/or federal law for the particular Claim(s) asserted. Requests to the Company shall be delivered to the Company's Chief Legal Officer by certified mail at 2795 E Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121. Requests to you shall be delivered by certified mail to the last known mailing address you provided in writing to the Company. The arbitration shall take place in the county where you were last employed by the Company and the substantive law of the State of that county shall be the governing law, unless the Parties agree otherwise. You will pay the initial JAMS filing fee should you file a demand for arbitration, provided that the JAMS fee does not exceed the initial filing fees charged by a court with jurisdiction over the matter; the Company will pay the arbitrator's fees and any additional administrative fees unique to arbitration; the Parties will pay for their own fees and costs to the extent they would be required to in a court of law.

5. **Arbitrator's Authority**. The arbitrator shall apply applicable law to determine issues of liability and damages regarding all Claims to be arbitrated. The arbitrator is authorized to award any remedy or relief that would have been available to the Parties had the matter been heard in court. The arbitrator shall have the authority to provide for the award of attorneys' fees and costs to the prevailing party, if such award is authorized by applicable law. The decision of the arbitrator shall be in writing and shall provide the reasons for the arbitrator's award. The arbitrator's authority to resolve disputes and make awards under this Agreement is limited to disputes between (1) you as an individual and the Company and/or Company Group; and (2) you as an individual and any current or former officer, director, representative, employee, and/or agent for conduct within the scope of his or her employment with the Company or Company Group. No arbitration award or decision will have any preclusive effect on any third-party claim or dispute. This Agreement shall not be construed to deprive a Party of any substantive right preserved by law.

6. **Acceptance of Agreement**. Your employment and/or continued employment with the Company shall be deemed acceptance of the terms of the Agreement. By accepting or continuing employment with the Company, you agree to the terms of this Agreement.

7. **No Class, Collective, or Group Actions**. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a class member in any class, collective, and/or group action against the other, excluding any currently pending actions at the time this Agreement is entered into by the Parties. The Parties agree that any class claims that are found not subject to arbitration under this Agreement shall be resolved in court, and are stayed pending the outcome of the arbitration. The Parties agree that a court, not an arbitrator, shall determine whether any claims must proceed on a class, collective, or group basis.

8. **No Representative Actions**. The Parties agree that each may file claims against the other only in their individual capacities, and may not file claims as a plaintiff and/or participate as a representative in any representative action against the other, except to the extent this provision is unenforceable under the law, excluding any currently pending actions at the time this Agreement is entered into by the Parties. To the extent permitted by applicable law, the Parties agree that any representative claims that are found not subject to arbitration under the law shall be severed from a Party's individual claim and resolved in court, and shall be stayed pending the outcome of the arbitration of any individual claims. The Parties agree that a court, not an arbitrator, shall determine whether any claims must proceed on a representative basis.

9. **Mass Arbitration and Bellwether Protocols.**

   a. To the extent permitted by applicable law, to increase efficiency of resolution, in the event 25 or more arbitration demands of a similar nature are filed within 180 days of an arbitration demand filed on your behalf, and your claim or defense is presented by or with the assistance or involvement of the same law firm, organization, or collection of law firms as is involved in the other arbitrations of a similar nature, the Parties agree that this will constitute a "Mass Arbitration."

   b. If the Parties disagree about whether a Mass Arbitration has been instituted, either Party may request that the arbitration provider determine that a Mass Arbitration has been instituted and that the procedures below are applicable. For purposes of making this determination, the Parties agree that arbitration demands are of a "similar nature" if they arise out of or relate to a similar factual scenario and raise the same or similar legal issues and seek the same or similar relief.

   c. From the date of agreement that a Mass Arbitration has been filed, or if the arbitration provider determines that a Mass Arbitration has been filed, either Party may opt-out of arbitration within 30 days of the determination. You may opt out of arbitration by providing written notice of your intention to opt out to the arbitration provider and to the Company, Attn: Chief Legal Officer at 2795 E Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121 via U.S. certified mail or hand delivery. The Company and/or any involved member(s) of the Company Group may opt out of arbitration by sending written notice of its intention to opt out to the arbitration provider and to you or your attorney, agent, or representative if you are represented.

   d. If the Parties proceed with the Mass Arbitration, they agree that the following terms and procedures shall apply: First, the Parties agree to the following bellwether protocols intended to reach a fair and speedy resolution of all claims in the Mass Arbitration. The arbitration provider shall randomly select four (4) demands for arbitration to proceed, and then claimants and respondents shall each select three (3) demands for arbitration to proceed, for a total of ten (10) arbitrations ("Bellwether Arbitrations"). While the Bellwether Arbitrations are adjudicated, all remaining demands for arbitration comprising the Mass Arbitration shall be held in abeyance and stayed, and no Party shall be responsible for paying any additional administration or arbitrator fees (other than initial filing/administrative fees) while the Bellwether Arbitrations are adjudicated. Any applicable statute of limitations regarding those demands shall be tolled beginning from the date of determination there is a Mass Arbitration. The Parties agree that these bellwether procedures are designed to achieve an overall faster, more efficient, and less costly mechanism for resolving Mass Arbitrations, including claims that are not selected for Bellwether Arbitrations. Accordingly, following the resolution of all of the Bellwether Arbitrations, the Parties shall engage in a global mediation of all remaining demands for

    arbitration comprising the Mass Arbitration. The mediation shall be administered by the arbitration provider, or a mutually agreeable other mediator.

  e. If the Parties are unable to reach a global resolution following the above Bellwether Arbitrations and global mediation, the following batching provisions shall apply to the remaining claims:

    i. The Parties shall cooperate to group the arbitration demands into randomized batches of no more than 100 demands per batch. To the extent there are fewer than 100 arbitration demands left over after the batching previously described, a final batch shall consist of the remaining demands.

    ii. Claimants' counsel shall organize and present the batched demands to the arbitration provider in a format as directed by the arbitration provider.

    iii. The arbitration provider shall treat each batch of demands as one case, with each case having one demand for arbitration, one appointed arbitrator, and one set of administrative documents, and administrative, arbitrator, and filing fees per batch.

    iv. A separate arbitrator will be appointed to, and administrative and filing fees assessed for, each batch of demands.

    v. This batching process shall not impact the nature of these actions as individual in nature, including that the arbitrator will make a separate determination for each claimant, nor shall it change the burden of proof on each individual claimant.

  f. You agree to cooperate in good faith with the Company and/or Company Group and the arbitration provider to implement such a batch approach to resolution. Disagreements over the applicability of this batch arbitration process will be settled in a single, consolidated arbitration proceeding that includes all affected Parties and is resolved by a single arbitrator subject to the requirements of this section.

10. **Opt-Out**. You have thirty days after receiving this Agreement to opt out of arbitration. If you opt-out, then neither the Company nor you will be bound by the terms of this Agreement. To opt out, you must: (1) notify the Company in writing that you are opting-out; (2) sign the writing; and (3) mail or have it delivered to Company's Chief Legal Officer at 2795 E Cottonwood Parkway, Suite 300, Salt Lake City, UT 84121 so that the Company receives it no later than thirty days after the date you received this Agreement. Such written notice may simply state "I wish to opt out of the arbitration program" or words to that effect. If no such notice is delivered before the thirty-day period, then this Agreement will become fully effective and binding upon the date below. If you opt out, the decision to do so will not adversely affect your employment in any way.

11. **Protections**. If a court determines that this Agreement is lacking any employee protections required by law, the Company may offer the employee protections the court and/or law deems necessary to preserve the enforceability of this Agreement.

12. **Severability**. If any provision of this Agreement is determined to be illegal or unenforceable, such determination shall not affect the balance of this Agreement, which shall remain in full force and effect, and such invalid provision shall be deemed severable, provided that in all circumstances no provision of this Agreement may be severed if the effect would be to allow class, collective or representative arbitration.

13. **Miscellaneous**. The Parties agree that the Company is engaged in transactions involving interstate commerce, and this Agreement shall be enforceable under the substantive and procedural provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. This Agreement supersedes any prior written and/or verbal agreements concerning arbitration between the Parties.

BY SIGNING THIS AGREEMENT, THE PARTIES HEREBY WAIVE THEIR RIGHT TO HAVE ANY DISPUTE, CLAIM OR CONTROVERSY DECIDED BY A JUDGE OR JURY IN A COURT.

BY SIGNING THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU HAVE CAREFULLY READ THIS AGREEMENT, THAT YOU UNDERSTAND ITS TERMS, AND THAT YOU HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT.

Dated: _____, 202__        By: _____
                                              EMPLOYEE

                                     Print Name: _____

Dated:  October 12, 2023         EXTRA SPACE MANAGEMENT, INC.

                                     By:  *W Harper*

                                     Its:  Sr Vice President of People

Signature: *Jordan Burkhardt*
Jordan Burkhardt (Oct 26, 2023 15:05 PDT)

Email: 500611775@extraspace.com

Page **5** of **5**

Exhibit A Page - 5

# CERTIFICATE OF SERVICE

I, the undersigned, am at least 18 years old and not a party to this action. I am employed in the County of San Diego with the law offices of Fisher & Phillips LLP and its business address is 4747 Executive Drive, Suite 1000, San Diego, California 92121.

On February 25, 2025, I served the following document(s) **DECLARATION OF ROBBIE YOACHUM, SR. IN SUPPORT OF DEFENDANT EXTRA SPACE MANAGEMENT, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THE ACTION** on the person(s) listed below by placing ☐ the original ☒ a true copy thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| Timothy B. Del Castillo (SBN: 277296)<br>Lisa L. Bradner (SBN: 197952)<br>Kent L. Bradbury (SBN: 279402)<br>Bryce Q. Fick (SBN 322951)<br>**CASTLE LAW: CALIFORNIA EMPLOYMENT COUNSEL, PC**<br>2999 Douglas Blvd., Suite 180<br>Roseville, California 95661 | Telephone: (916) 245-0122<br>E-Mail: tdc@castleemploymentlaw.com<br>lb@castleemploymentlaw.com<br>kb@castleemploymentlaw.com<br>bf@castleemploymentlaw.com<br><br>*Attorneys for Plaintiff, Jordan Burkhardt* |

☐ **[by MAIL]** - I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed February 25, 2025, at San Diego, California.

Angelica Green-Rosas    By: *Angelica Green-Rosas*
Print Name                    Signature